UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

JOHN ALFORD and CODY CARROLL,  *
individually and on behalf of  *
all others similarly  *
situated;  *
  *
        Plaintiffs,  *
  *
v.  *
  *
FREEDOM OILFIELD SERVICES,  *   CIVIL NO. SA-16-CA-00331-DAE
LLC, and JAMES BARRON;  *
MATTHEW EVANS; DONALDLEE  *
GLOVIER; SAMUEL C. HESTER;  *
and ROBERT E. MOSLEY,  *
individually and as officers  *
of Freedom Oilfield Services,  *
LLC;  *
  *
        Defendants.  *

## MEMORANDUM AND RECOMMENDATION

Before the Court is plaintiffs' Motion for Conditional Certification (docket nos. 9 and 15), to which defendants have responded (docket no. 13); and plaintiffs' Motion for Approval and Distribution of Notice and For Disclosure of Contact Information (docket nos. 10 and 16), to which defendants have also responded (docket no. 14). Upon consideration of the motions, responses and applicable law, the undersigned believes that plaintiffs' Motion for Conditional Certification should be **GRANTED as modified** (docket no. 9), and plaintiffs' Motion for Approval and Distribution of Notice and For Disclosure of Contact Information should be **GRANTED in part** and **DENIED in part** (docket no. 10).

**FACTUAL BACKGROUND**

Defendant, Freedom Oilfield Services, LLC ("FOS"), is a foreign limited liability company created and existing under the laws of Louisiana and registered to do business in the State of Texas. (Docket no. 1). FOS allegedly has annual gross revenues in excess of $500,000.00, and provides products and services in the oil and gas industry throughout the United States in those areas where fracking is a viable business. (Id.).

Plaintiffs, Jon Alford and Cody Carroll, bring this action for violation of the Fair Labor Standards Act ("FLSA") as a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of themselves and all persons similarly situated as Operators and/or Field Supervisors who were, are or will be employed by defendant and were improperly misclassified as exempt from payment of the overtime premium at any time within the applicable statute of limitations period and who are entitled to payment for overtime wages which defendant failed to pay due to the allegedly intentional misclassification of plaintiffs and of those similarly situated. (Id.). Plaintiffs, individually and on behalf of others similarly situated, seek declaratory judgment, monetary damages, liquidated damages, prejudgment interest and attorneys' fees. (Id.).

## APPLICABLE LAW

Section 207(a) of the FLSA requires covered employers to compensate nonexempt employees at overtime rates for time worked in excess of statutorily defined maximum hours. **29 U.S.C. § 207(a)**. Section 216(b) creates a cause of action against employers who violate the overtime compensation requirements. **29 U.S.C. § 216(b)**. Section 216(b) also permits an employee to bring suit against an employer on "behalf of himself ... and other employees similarly situated." *Id.*

In determining whether to certify a collective action pursuant to **29 U.S.C. § 216(b)**, the Court employs the two stage test set forth in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987). *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1212 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90, 90-91 (2003); *see also Vallejo v. Northwest I.S.D.*, No. SA-12-CV-270-XR, 2012 WL 5183581, at *1 (W.D.Tex. Oct. 17, 2012)(explaining that while the Fifth Circuit has not adopted a specific test for determining whether to certify a collective action under **29 U.S.C. § 216(b)**, the prevailing analysis used by federal courts is the *Lusardi* two-stage test); *Vargas v. HEB Grocery Co., LP*, No. SA-12-CV-116-XR, 2012 WL 4098996, at *3 (W.D.Tex. Sept. 17, 2012).

In *Mooney*, the Fifth Circuit explained the *Lusardi* analysis as follows:

The first determination is made at the so-called 'notice stage.' At the notice stage, the district court makes a decision-usually based only on the pleadings and any affidavits which have been submitted-whether notice of the action should be given to potential class members.

Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class. If the district court 'conditionally certifies' the class, putative class members are given notice and the opportunity to 'opt-in.' The action proceeds as a representative action throughout discovery.

The second determination is typically precipitated by a motion for 'decertification' by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives-- i.e. the original plaintiffs--proceed to trial on their individual claims.

***Mooney***, 54 F.3d at 1213-14.

The potential class must be "similarly situated" to the named plaintiff(s) in order for the Court to find that conditional certification is appropriate. To make this determination, the Court looks only to the pleadings and affidavits. ***Id.*** "The decision to create an opt-in class under §216(b), like the decision on class certification under Rule 23, remains soundly within the discretion of the District Court." ***Espinosa v. Stevens Tanker Div., LLC***, SA-15-CV-879-XR, 2016 WL 4180027, at *2 (W.D.Tex. Aug. 5, 2016)(*quoting* ***Hipp v. Liberty***

*Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001); *see also* U.S.C. § 216(b); *Mooney*, 54 F.3d at 1213-14.

Further, the standard for determining whether the potential class of plaintiffs is "similarly situated" is a lenient one and, generally, the request for conditional certification is granted. *Mooney*, 54 F.3d at 1214; *see also Vallejo*, 2012 WL 5183581, at *1. As the Fifth Circuit noted in *Mooney*, "courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination." *Id.*, 54 F.3d at 1214, n.8 (*quoting Sperling v. Hoffman-La Roche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. 1988)).

## DISCUSSION

### I.   Motion for Conditional Certification

Plaintiffs initially sought to certify the following class: **[a]ll of Defendant's Operators and/or Field Supervisors (or similar positions) who worked at any time after April 4, 2013.** (Docket no. 9, pg. 2). Plaintiffs allege that the proposed FLSA class members are similarly situated in that they have been subject to uniform practices by defendant which violated the FLSA, including: being misclassified as exempt employees under the FLSA; and not being paid overtime compensation in violation of the FLSA, **29 U.S.C. § 201** *et seq*. Defendants argue that conditional certification is inappropriate because 1) there is

no evidence of a single decision, policy or plan that violates the FLSA; 2) plaintiffs are not similarly situated to the putative class members; and 3) plaintiffs lack evidence to support certification. For reasons addressed below, defendants' objections lack merit and should be overruled.

## 1. Evidence of a single decision, policy or plan

Defendants initially argue that plaintiffs cannot establish that defendants had a single, decision, policy or plan that violates the FLSA. However, because discovery has not yet occurred in this case, plaintiffs' need only make "through their pleadings and any affidavits, 'substantial allegations that putative class members were together the victims of a single decision, policy or plan ....'" *Albanil v. Coast 2 Coast, Inc.*, Civ. A. No. H-08-486, 2008 WL 4937565, at *6 (S.D.Tex. Nov. 17, 2008)(*quoting* *Mooney*, 54 F.3d at 1214). "Plaintiffs accomplish this via a minimal factual showing that '(1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit.'" *Id.* (*quoting* *Maynor v. Dow Chem. Co.*, No. G-07-504, 2008 WL 2220394, at *6 (S.D.Tex. May 28, 2008)); *but see* *Jones v. Cretic Energy Servs., LLC*, 149 F. Supp. 3d 761, 768 (S.D.Tex. 2015)(rejecting requirement that plaintiffs provide

evidence of third prong because it is not statutorily required and conflicts with Supreme Court's directive that the FLSA be liberally construed to effect it purposes).

Here, plaintiffs submit the declaration of Alford, an Operator, and Carroll, a Field Supervisor, who state that they were employed by defendants during the relevant time period; they were employed as "Operator" and "Field Supervisor," respectively; their primary job duties entailed manual labor; they did not have any special education and learned to do the job by watching others perform similar jobs; they were always classified as salaried employees and were not paid overtime wages; in addition to their salary, they received regular bonuses as part of their compensation; they worked at various well sites in Texas and worked with different Operators and Field Supervisors but their job duties were always the same; they did not supervise other employees, did not have authority to hire or fire, did not recommend other employees for promotion or demotion, did not have authority to bind the company and did not order supplies; they did not receive overtime for hours worked in excess of forty (40) per week; based on their observations of the employees they worked with and the types of projects they worked on, long hours were typical for Operators and Field Supervisors; and based on their experiences, they believe there are other Operators and Field Supervisors that

would want to join this lawsuit if notice was issued and they were made aware of this suit. (Docket no. 9, exh. 1).

While plaintiffs have different titles, defendants admit that the terms "Operator," "Lead Operator," and "Field Supervisor" refer to the same job position and encompass the same individuals. (Docket no. 13, pg. 3). Based on the foregoing, it appears that plaintiffs have established through their pleadings and affidavits, substantial allegations that putative class members worked in excess of forty hours, were not paid overtime wages, and were together the victims of a single illegal decision, policy or plan.

Nevertheless, defendants argue that because the U.S. Department of Labor audited defendants in May of 2016 and expressly found that the Operator/Field Supervisor position was exempt under the Motor Carrier Act, that plaintiffs cannot demonstrate that defendants have engaged in any *illegal* activity.[1] Defendants submit a transcript of a phone call between Krisi Callender of FOS and Estrella McKinney, an investigator with the U.S. Department of Labor, as evidence that these positions are exempt, as well as letters from the U.S. Department of Labor, CAT weight sheets for several of

---

[1]Defendants also asserted the Motor Carrier Act ("MCA") exemption as an affirmative defense in their answer. (Docket no. 8, Defendants' Answer and Affirmative Defenses to Plaintiffs' Original Collective Action Complaint, pg. 2).

defendants' vehicles, and travel logs. (Docket no. 13, exhs. B2-5).

The MCA exemption, **29 U.S.C. § 213(b)(1),** "relieves an employer from the obligation to pay overtime wages for 'any employee with respect to whom the Secretary of Transportation [("the Secretary")] has power to establish qualifications and maximum hours of service pursuant to the provisions of [the MCA codified at 49 U.S.C. § 31502]." *Aston v. Glob. Prisoner Servs. LLC,* No. 16-CV-420-DAE, 2016 WL 4079547, at *2 (W.D.Tex. July 29, 2016)(*quoting* **29 U.S.C. § 213(b)(1)).** The MCA, authorizes the Secretary to "prescribe requirements for qualifications and maximum hours of service of employees of, and standards of equipment of, a motor private carrier, when needed to promote safety operation." *Id.* (*quoting* **49 U.S.C. § 31502(b)(2)).** The Secretary has made clear that the exemption "depends both on the class to which his employer belongs and on the class of work involved in the employee's job." *Id.* (*quoting* **29 C.F.R. § 782.2(a)).** The regulation specifically states that the Secretary's power extends only to those classes of employees who: "(1) [a]re employed by carriers whose transportation of passengers or property by motor vehicle is subject to his jurisdiction under section 204 of the [MCA] . . . ; and (2) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on

the public highways of passengers or property in interstate or foreign commerce within the meaning of the [MCA]." *Aston*, 2016 WL 4079547, at \*2 (*quoting* **29 C.F.R. § 782.2(a)**). An employee must meet both qualifications for the motor carrier exemption to apply. *Allen v. Coil Tubing Servs., LLC*, 755 F.3d 279, 283 (5th Cir. 2014).

While defendants may very well be entitled to this affirmative defense, "[t]he application of the Motor Carrier Act exemption goes to the merits of whether the [Operators and Field Supervisors] are exempt from overtime pay" and is an insufficient basis for denying conditional certification and notice. *Albanil*, 2008 WL 4937565, at \*7 (*citing* *Foraker v. Highpoint S.W. Servs., L.P.*, No. H-06-1856, 2006 WL 2585047, at \*4 n. 16 (S.D.Tex. Sep.7, 2006)(finding defendants' assertion of an exemption goes to the merits and is not a persuasive basis to preclude conditional certification and notice)). Notably, the defendants in *Albanil*, much like the defendants in the present case, relied on "a recent Department of Labor investigation into [defendants' pay practices, which culminated in the Department of Labor's determination that defendants' 'employees' were exempt from overtime pay under the Motor Carrier Act exemption]." *Id.*, at \*4. Notwithstanding the DOL's finding, the Court conditionally certified the class, finding that "a

conclusive determination that the exemption applies, or does not, would be premature." ***Albanil***, 2008 WL 4937565, at *8.

Similarly, in the present case, the undersigned believes that a determination that the defendants are entitled to the affirmative defense of an MCA exemption would be premature at this stage particularly since the parties have not yet engaged in discovery. Accordingly, defendants' objection on this basis should be overruled.

## 2. Similarly Situated

Defendants next argue that they are unable to respond properly to the vague catch-all of "all of Defendant's Operators and/or Field Supervisors (or similar positions)." However, defendants admit in their response that the terms "Operators," "Lead Operators" and "Field Supervisors" refer to the same position. Further, in their reply, plaintiffs agree that the class should be modified as follows: **"all of Defendant's Operators, Lead Operators and Field Supervisors who were employed at any time after April 4, 2013."** Accordingly, defendants' objection to the phrase "similar positions" should be overruled.

Defendants also maintain that Alford, who executed a "Waiver of Rights" upon his separation from FOS, is not similarly situated to Carroll, who did not sign a waiver, and further, that Alford cannot properly represent the class because

he is no longer an aggrieved individual.  Citing **Martin v. Spring Break '83 Prod., L.L.C.**, 688 F.3d 247 (5th Cir. 2012), defendants argue that "Alford's severance and waiver resulted from a bona fide dispute regarding liability as to allegedly owed overtime wages."  In support of their position, defendants cite to language in the waiver which provides that in exchange for $3,750.29, Alford agrees to release defendants from any claims pertaining to discrimination or related to Alford's employment or separation of employment, including "a cause of action for wages."  (Docket no. 13, exh. B-1).  However, tellingly, in her Declaration, Kristi Callender, the Human Resources Director of FOS, states that "[w]hen John Alford left Freedom in February of 2015, he accepted a severance package and executed a 'Waiver of Rights.'  Alford expressly agreed that his severance pay was consideration for waiving, among other things, all claims for wages and liquidated damages."  (Id., exh. B).

**Martin** makes clear that before a plaintiff will be found to have waived his FLSA rights, there must be *bona fide* dispute between the parties over the amount of hours worked or wages due.  **Id.** at 255(*citing* **Martinez v. Bohls Bearing Equip. Co.**, 361 F.Supp.2d 608, 633 (W.D.Tex. 2005)).  Defendants submit no evidence that the parties reached a compromise "as to Alford's FLSA claims" following "a bona fide dispute as to the amount of hours worked or compensation due."  Indeed, in her Declaration

Callender seems to indicate that Alford was offered a severance package in exchange for waiving any and all claims Alford "has ever had, or now has" against the defendant FOS, including any potential FLSA claims. The waiver does not address any actual wage dispute between the parties, nor do defendants provide evidence of same. Consequently, defendants' argument that Alford waived his right to pursue a FLSA claim is unavailing.

Finally, defendants contend that classifying employees as exempt is insufficient to satisfy the similarly situated standard and further, that the defenses in this case are also dissimilar rendering this case inappropriate for class certification. For reasons previously stated, plaintiffs have met their burden, which is "fairly lenient" at this stage, of showing they are similarly situated in terms of job requirements and payment provisions. *Mateos v. Select Energy Servs., LLC*, 977 F.Supp.2d 640, 643-45 (W.D.Tex. 2013)(*citing Ryan v. Staff Care, Inc.*, 497 F.Supp.2d 820, 824-25 (N.D.Tex. 2007)). The fact that plaintiffs were all designated as exempt from overtime wages, worked in excess of forty hours a week, and were paid a salary and bonuses but no overtime is sufficient to show plaintiffs are similarly situated in terms of payment provisions. Further, although defendants contend "the experience of Operators with respect to small vehicles is substantially dissimilar, "similarly situated" does not require

the employees to work in identical positions only similar ones. **Espinosa**, 2016 WL 4180027, at *3 (W.D.Tex. Aug. 5, 2016)(*citing* **Mateos**, 977 F.Supp.2d at 643-45 (internal cite omitted)); **see also Tolentino v. C & J Spec-Rent Servs., Inc.**, 716 F.Supp.2d 642, 651 (S.D.Tex. 2010)("[s]light differences in job duties or functions do not run afoul of the similarly situated requirement"). In fact, defendants admit that the positions of "Operator," "Lead Operator" and "Field Supervisor" "refer to the same job position and encompass the same individuals" which would appear to indicate that the positions are more similar than dissimilar.

Likewise, defendants' contention that its defenses are dissimilar and preclude conditional certification is also unavailing at this stage of the proceedings. **See Jones**, 149 F.Supp.3d at 774 (*citing* **e.g.**, **Dreyer v. Baker Hughes Oilfield Operations, Inc.**, No. H-08-1212, 2008 WL 5204149, at *2 (S.D.Tex. Dec. 11, 2008)(rejecting defendant's argument that the possible application of multiple FLSA exemptions precluded conditional certification "because exemptions are merits-based defenses to an FLSA claim" that "cannot defeat conditional certification") *and* **Foraker**, 2006 WL 2585047, at *4 n. 16 (rejecting the defendant's argument that conditional certification should be denied because the plaintiffs were supervisors and exempt under the executive exemption because

this argument goes "to the merits of whether the employees are exempt . . . and is not a persuasive basis to deny notice")). Accordingly, defendants' objections should be overruled.

### 3. Plaintiffs Lack Evidence to Support Certification

Defendants next maintain that plaintiffs do not provide the needed evidence to support certification and that they have failed to show that other opt-ins may join this suit. However, for reasons previously stated, defendants' arguments are unavailing. Both Alford and Carroll have sufficiently alleged "through their pleadings and . . . affidavits, 'substantial allegations that putative class members were together the victims of a single decision, policy or plan ....'" While their declarations are similar, so too are their duties and claims.

Finally, although defendants assert plaintiffs have failed to show other opt-ins may join this suit, this third element is not statutorily required and has not been stringently applied at the initial stage of proceedings given the Supreme Court's directive that the FLSA be liberally construed to effect its purposes. ***Jones,*** 149 F.Supp.3d at 768 (*citing* ***Tony and Susan Alamo Found. v. Sec'y of Labor***, 471 U.S. 290, 105 S.Ct. 1953, 1959 (1985)). Moreover, in alleging their belief, based on their experience working with other Operators and Field Supervisors, that others would join the suit if they were made aware of it, plaintiffs have met their burden at this stage of

the proceedings.  *Mooney*, 54 F.3d at 1214.  Accordingly, defendants' objections as to a purported deficiency of the evidence should be overruled.

## II. Motion for Approval and Distribution of Notice and For Disclosure of Contact Information

Plaintiffs also move for Approval and Distribution of Notice and for Disclosure of Contact Information.  (Docket no. 10).  Defendants initially respond that plaintiffs' motion is premature and that the parties should be required to confer only if and when a court grants conditional certification.  However, plaintiffs are disadvantaged by needless delay given that the limitations period is not tolled as to individual claimants until the claimant files a written opt-in consent form.  *Garcia v. TWC Admin., LLC*, SA:14-CV-985-DAE, 2015 WL 1737932, at *6 (W.D.Tex. Apr. 16, 2015) (*citing* **29 U.S.C. § 256(b)** *and Quintanilla v. A & R Demolition, Inc.*, No. Civ.A. H-04-1965, 2005 WL 2095104, at *16 (S.D.Tex. Aug.30, 2005)).

However, as defendants point out judicial resources are preserved by permitting the parties to conform the notice to the Court's class definition.  Similarly, addressing the crux of defendants' complaints to the proposed notice will permit the parties to conform the notice without further intercession from the Court.  Here, defendants state that if a class is conditionally certified "[d]efendants do not object to the

16

sending of notice." Instead, defendants object to what they refer to as "plaintiffs' deviation from common notice practice." In particular, defendants object to the following: 1) plaintiffs' request to attach a copy of their Original Complaint and defendants' Answer to the notice; 2) plaintiffs' request for 90 days to effectively locate class members and send out notices; 3) plaintiffs' request that defendants post the notice at defendants' district office; 4) plaintiffs' request for electronic correspondence; 5) plaintiffs' request for follow up correspondence; and 6) plaintiffs' request for dates of birth, phone numbers, and partial social security numbers. In the interest of judicial economy, the undersigned addresses these objections but ultimately recommends that the parties be ordered to confer and submit agreed upon notice and consent forms in conformity with this Memorandum and Recommendation within fourteen (14) days from the District Court's Order.

**1. Attaching a copy of plaintiffs' Original Complaint and defendants' Answer to the notice**

Defendants object to the inclusion of the pleadings along with the notice, arguing that there is no authority for doing so. In response, plaintiffs' cite to a single case wherein plaintiffs were permitted to attach their complaint along with the notice. However, the proposed notice here provides a description of the lawsuit and includes plaintiffs' allegations

as well as a brief summary of defendants' response to plaintiffs' claims. (Docket no. 10, exh. A). Additionally, the style of the case is provided, as well as counsel's contact information, and any potential class member could easily obtain further information, including a copy of the pleadings, should he or she so desire. In short, attaching the pleadings to the notice serves no useful purpose and does not appear to be necessary to ensure sufficient notice in this case. Accordingly, plaintiffs' request to include the pleadings should be **DENIED.**

**2. Request for 90 days to locate and send notice**

Plaintiffs state that because of the nature of their jobs, many potential class members are away from home for extended periods of time and consequently, plaintiffs' counsel will need at least ninety days to locate and send them notice. Although defendants object to this time as being excessive, the undersigned believes plaintiffs' stated reason has merit. Accordingly, plaintiffs' request for a ninety (90) day period to locate class members and send out notices should be **GRANTED.**

**3. Posting the notice at defendants' district office**

Defendants' next object to the notice being posted at defendants' district office. Posting notice in a workplace has been approved as an appropriate form of notice in FLSA cases. ***Garcia***, 2015 WL 1737932, at *6 (*citing **Pacheco v. Aldeeb***, No.

5:14-CV-121-DAE, 2015 WL 1509570, at *9 (W.D.Tex. Mar.31, 2015) *and* **Barajas v. Acosta**, No. H-11-3862, 2012 WL 1952261, at *4 (S.D. Tex. May 30, 2012)). Accordingly, plaintiffs' request to post the notice at defendants' district offices should be **GRANTED**.

## 4. Electronic correspondence

Plaintiffs also maintain that because putative class members are in the field for extended periods of time that notice via regular mail is insufficient. Consequently, plaintiffs seek to provide notice by email as well as by U.S. mail.

However, generally putative class members' names and addresses are sufficient to ensure that notice is received. **Garcia**, 2015 WL 1737932, at *4 (*citing* **e.g., Altiep v. Food Safety Net Servs., Ltd.**, No. 3:14-CV-00642-K, 2014 WL 4081213, at *6 (N.D.Tex. Aug. 18, 2014)("denying plaintiffs' request for telephone numbers and email addresses because '[p]laintiffs have shown no reason that sending a letter to a potential plaintiff's last known address would provide inadequate notice'"); **Aguayo v. Bassam Odeh, Inc.**, No. 3:13-CV-2951-B, 2014 WL 737314, at *6 (N.D. Tex. Feb.26, 2014)("limiting production to putative class members' names, last known addresses, and dates of employment"); *and* **Page v. Nova Healthcare Mgmt., LLP**, No. H-12-2093, 2013 WL 4782749, at *7 (S.D.Tex. Sept. 6, 2013)("denying plaintiffs'

request for telephone numbers 'because of the highly private and sensitive nature of this information' and limiting production to potential plaintiffs' names and last known mailing addresses")). Further, because plaintiffs have been afforded an extended period of time to locate and send notices, additional email contact with each putative class member would appear to be unnecessary.

Accordingly, plaintiffs' request for notice by email as to all putative class members should be **DENIED**. However, for those putative class members whose notices are returned as undeliverable or for whom defendants do not have a mailing address, defendants should be prepared to automatically provide email information for these putative class members within seven (7) days of being notified by plaintiffs that mail has been returned as undeliverable. For those putative class members for whom defendants do not have a current address, defendants should be prepared to automatically provide email information for these putative class members within the time provided by the District Court for providing contact information for putative class members.

**5. Follow up correspondence**

Plaintiffs seek to send a follow up postcard via U.S. Mail and a follow up email to any potential class member who has not responded thirty days after the initial mailing. However,

plaintiffs provide no reason why a reminder notice is necessary to ensure sufficient notice in this case. *See Garcia*, 2015 WL 1737932, at *6 (*citing* ***In re Wells Fargo Wage and Hour Emp't Practices Litig. (No. III)("Wells Fargo III")***, 2013 WL 2180014, at *3 (S.D.Tex. May 17, 2013)(denying plaintiffs' request for a reminder notice as unnecessary and inappropriate)). Accordingly, plaintiffs' request for a reminder notice should be **DENIED**.

## 6. Dates of birth, phone numbers, and partial social security numbers

Plaintiffs also seek dates of birth, phone numbers and partial social security numbers for any class member whose mailed notice is returned as undeliverable. Defendants object to this request, stating that it is unwarranted because "there is no evidence that Defendants are unable or unwilling to provide addresses for its employees." Defendants further argue that the privacy interests of potential class members should be protected.

Generally, privacy and security concerns outweigh the interest in ensuring that notice is received. *See Garcia*, 2015 WL 1737932, at *4 (*citing* ***White v. Integrated Elec. Techs., Inc.***, No. 12-359, 2013 WL 2903070, at *10 (E.D.La. June 13, 2013)("denying plaintiffs' request for production of the last four digits of Social Security numbers because plaintiffs were

adequately equipped to notify all potential class members and privacy concerns outweighed the benefits of disclosure")).

Nevertheless, in the interest of judicial economy, the Court believes the request should be conditionally granted in the event the defendants are unwilling or unable to provide valid U.S. mail addresses or valid email addresses for every putative class member.

Accordingly, plaintiffs' request for dates of birth, phone numbers and partial social security numbers should be **GRANTED** to the extent defendants are unable and/or unwilling to provide accurate contact information[2] for members of the putative class. If they cannot provide accurate contact information, upon being notified by plaintiffs of a deficiency, defendants should provide the above information within seven (7) days of being so notified and should do so without further intercession from this Court.

<u>CONCLUSION</u>

For the foregoing reasons, plaintiffs' Motion for Conditional Certification should be **GRANTED as modified** (docket no. 9), and plaintiffs' Motion for Approval and Distribution of

---

[2] "Contact information" includes a physical address where the putative class member can and does receive mail. Additionally, where mail is returned as undeliverable or the defendants cannot provide a current physical address for a putative class member, "contact information" includes a valid email address.

Notice and For Disclosure of Contact Information should be **GRANTED in part** and **DENIED in part** (docket no. 10).

<u>**RECOMMENDATION**</u>

It is the recommendation of the Magistrate Judge that plaintiffs' Motion for Conditional Certification be **GRANTED as modified** (docket no. 9), and that the following class be conditionally certified: **"all of Defendant's Operators, Lead Operators and Field Supervisors who were employed at any time after April 4, 2013."**

Additionally the undersigned further recommends that plaintiffs' Motion for Approval and Distribution of Notice and For Disclosure of Contact Information be **GRANTED in part** and **DENIED in part** (docket no. 10). Should the District Court accept this recommendation, defendants should be ordered to produce, in a usable electronic format, the names, last known addresses, and dates of employment for all putative class members (as modified) within ten (10) days from the date of the District Court's Order.

Defendants should be ordered to automatically provide email addresses if they are unable or unwilling to provide current addresses or should the notices be returned as undeliverable.

Further, defendants should be ordered to provide, without further intercession from the Court, dates of birth, phone numbers, and partial social security numbers should defendants

be unable or unwilling to provide valid postal and/or email addresses for the class members.

Finally, the parties should be ordered to confer and prepare agreed upon notice and consent forms in conformity with this Memorandum and Recommendation and submit the forms to the District Court within fourteen (14) days from the District Court's Order.

## Instructions for Service and Notice of Right to Object

The District Clerk shall serve a copy of this Memorandum and Recommendation on all parties either electronically or by mailing a copy by certified mail, return receipt requested. Pursuant to **28 U.S.C. § 636(b)(1)** and **FED.R.CIV.P. 72(b)(2)**, any party who desires to object to this Memorandum and Recommendation must serve and file specific written objections within 14 days after being served with a copy. Such party shall file the objections with the District Clerk and serve the objections on all other parties and the Magistrate Judge. A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report within 14 days after being served with a copy shall bar that party from de novo review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of factual findings and legal

conclusions to which the party did not object, which were accepted and adopted by the District Court. ***Thomas v. Arn***, 474 U.S. 140, 150 (1985); ***Douglass v. United Servs. Auto. Ass'n***, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

**SIGNED** August 17, 2016.

JOHN W. PRIMOMO
UNITED STATES MAGISTRATE JUDGE